## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| TED SIGMON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>   v.<br><br>TANGER FACTORY OUTLET CENTERS, INC.; TANGER PROPERTIES LIMITED PARTNERSHIP; TANGER GP TRUST; and TANGER LP TRUST,<br><br>Defendants. | Case No.  2:18-cv-03325-DCN |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Ted Sigmon, on behalf of himself and all others similarly situated, and alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this action individually and on behalf of all others similarly situated against Tanger Factory Outlet Centers, Inc., Tanger Properties Limited Partnership, Tanger GP Trust, and Tanger LP Trust ("Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities").

2.     Plaintiff has a mobility disability and is limited in the major life activity of walking, which has caused him to use a wheelchair for mobility.

3.      Plaintiff has visited Defendants' facilities and was denied full and equal access as a result of Defendants' inaccessible parking lots and paths of travel.

4.      Plaintiff's experiences are not isolated—Defendants have systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendants' facilities.

5.      In fact, numerous facilities owned, controlled, and/or operated by Defendants have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision making Defendants employ with regard to the design, construction, alteration, maintenance, and operation of its facilities causes access barriers and/or allows them to develop and persist at Defendants' facilities.

6.      Unless Defendants are required to remove the access barriers described below, and required to change their policies and practices so that access barriers do not reoccur at Defendants' facilities, Plaintiff and the proposed Class will continue to be denied full and equal access to those facilities as described and will be deterred from fully using Defendants' facilities.

7.      The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action.  In relevant part, the ADA states:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . ..  Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . ..

42 U.S.C. § 12188(a)(2).

8.      Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a. Defendants remediate all parking and path of travel access barriers at Defendants' facilities, consistent with the ADA;

b. Defendants change their policies and practices so that the parking and path of travel access barriers at Defendants' facilities do not reoccur; and

c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 8.a. and 8.b. has been implemented and will remain in place.

9.    Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals.  To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . ..  Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

### THE ADA AND ITS IMPLEMENTING REGULATIONS

10.    The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).

11.    The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

12.    Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations,  42 U.S.C. § 12182(a), and

prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

13.     Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability.  42 U.S.C. § 12182(b)(1)(D).

14.     Title III and its implementing regulations define discrimination to include the following:

    a.  Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

    b.  Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

    c.  For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

    d.  Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

15.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183.  42 U.S.C. 12188(a)(1).

16.     The ADA also provides for specific injunctive relief, which includes the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter.  Where appropriate, injunctive relief shall also include . . . modification of a policy . . . to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## THE REAL ESTATE INVESTMENT TRUST

17.     A real estate investment trust ("REIT") is a corporation, trust, or association that owns and operates income-producing real estate in a variety of property sectors and meets the requirements of 26 U.S.C. § 856.

18.     REITs receive preferential tax treatment on dividends paid to shareholders and function essentially as pass-through tax entities.

19.     To maintain preferential tax status, REITs commonly structure their organization through a variety of operating partnerships to segment their property operations and ownership interests.  For example, an umbrella partnership real estate investment trust ("UPREIT") is a REIT that holds substantially all of its properties through a partnership of which it is a partner.  In the UPREIT structure, the REIT is treated as indirectly owning real estate assets.  The operating partnerships, in turn, have a direct ownership interest in the REIT's properties.

20.     Defendant Tanger Factory Outlet Centers, Inc. is a publicly-traded REIT that, through its subsidiaries and affiliates, owns, manages, leases, and develops outlet centers and other retail properties throughout the United States.[1]

---

[1] Tanger Factory Outlet Centers, Inc., Annual Report (Form 10-K), at 3 (Feb. 22, 2018), available at

21.    More specifically, Defendant Tanger Factory Outlet Centers, Inc. "is a fully-integrated, self-administered and self-managed real estate investment trust[,] which, through its controlling interest in [Defendant Tanger Properties Limited Partnership], focuses exclusively on developing, acquiring, owning, operating and managing outlet shopping centers. The outlet centers and other assets are held by, and all of the operations are conducted by, [Defendant Tanger Properties Limited Partnership]." *Id.*

22.    Defendant Tanger Factory Outlet Centers, Inc. "owns the majority of the units of partnership interest issued by [Defendant Tanger Properties Limited Partnership] through its two wholly-owned subsidiaries, Tanger GP Trust and Tanger LP Trust. Tanger GP Trust controls [Defendant Tanger Properties Limited Partnership] as its sole general partner. Tanger LP Trust holds a limited partnership interest." *Id.*

23.    For management purposes, "Management operates [Defendant Tanger Factory Outlet Centers, Inc.] and [Defendant Tanger Properties Limited Partnership] as one enterprise. The management of [Defendant Tanger Factory Outlet Centers, Inc.] consists of the same members as the management of [Defendant Tanger Properties Limited Partnership]. These individuals are officers of [Defendant Tanger Factory Outlet Centers, Inc.] and employees of [Defendant Tanger Properties Limited Partnership]. The individuals that comprise [Defendant Tanger Factory Outlet Centers, Inc.'s] Board of Directors are also the same individuals that make up Tanger GP Trust's Board of Trustees." *Id.*

24.    As of December 31, 2017, Defendants' "consolidated portfolio consisted of 36 outlet centers, with a total gross leasable area of approximately 12.9 million square feet, which

https://www.sec.gov/Archives/edgar/data/899715/000089971518000070/skt10k2017123117.htm as of December 10, 2018.

were 97% occupied and contained over 2,600 stores representing approximately 400 store brands." *Id.* at 5.

## JURISDICTION AND VENUE

25.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

26.     Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

27.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

28.     Plaintiff is, and at all times relevant hereto was, a resident of South Carolina.  As described above, as a result of his disability, Plaintiff uses a wheelchair for mobility.  He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

29.     Defendant Tanger Factory Outlet Centers, Inc. is a REIT organized under North Carolina law and headquartered at 3200 Northline Avenue, Suite 360, Greensboro, NC 27408.

30.     Defendant Tanger Properties Limited Partnership is a North Carolina limited partnership headquartered at 3200 Northline Avenue, Suite 360, Greensboro, NC 27408.

31.     Defendant Tanger GP Trust, on information and belief, is a Maryland corporation headquartered at 12741 Ocean Gateway, Suite 705, Ocean City, MD 21842.

32.     Defendant Tanger GP Trust is a wholly-owned subsidiary of Defendant Tanger Factory Outlet Centers, Inc.

33.    Defendant Tanger LP Trust, on information and belief, is a Maryland corporation headquartered at 12741 Ocean Gateway, Suite 705, Ocean City, MD 21842.

34.    Defendant Tanger LP Trust is a wholly-owned subsidiary of Defendant Tanger Factory Outlet Centers, Inc.

35.    Defendants are a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

**I.     Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities.**

36.     Plaintiff has visited Defendants' facilities located at 4845 Tanger Outlet Blvd, Charleston, SC, including within the last year, where he experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and other ADA accessibility violations as set forth in more detail below.

37.     Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities, as the Tanger outlet in Charleston is a roughly fifteen minute drive from his home, and Plaintiff and his wife regularly visit this location, usually four times a year or more. Furthermore, Plaintiff intends to return to Defendants' facilities to ascertain whether those facilities remain in violation of the ADA.

38.     As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded.

39.     Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities, however, so long as Defendants' facilities remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendants' facilities.

40.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendants' facilities in violation of his rights under the ADA.

41.     As an individual with a mobility disability who uses a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' facilities, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

II.    **Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to Defendants' Facilities.**

42.    Defendants are engaged in the ownership, management, and development of retail properties, primarily outlet shopping centers, throughout the United States.

43.    As the owner and manager of their properties, Defendants employ centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of their facilities.

44.    To date, Defendants' centralized design, construction, alteration, maintenance, and operational policies and practices have systematically and routinely violated the ADA by designing, constructing, and altering facilities so that they are not readily accessible and are usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendants' facilities are maintained.

45.    On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendants and found the following violations, which are illustrative of the fact that Defendants implement policies and practices that routinely result in accessibility violations:

    a.   4840 Tanger Outlet Blvd, Charleston, SC

       i.    The surfaces of one or more access aisles had slopes exceeding 2.1%.

    b.   1475 N Burkhart Rd, Howell, MI

       i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

       ii.    A portion of the route to the store entrance had a running slope exceeding 5.0%.

    c.   46 Outlet Square, Hershey, PA

       i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

11

d.  2200 Tanger Blvd, Washington, PA

    i.  The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

    ii.  The surfaces of one or more access aisles had slopes exceeding 2.1%.

46.    The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendants' facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, is caused by Defendants' systemic disregard for the rights of individuals with disabilities.

47.    Defendants' systemic access violations demonstrate that Defendants either employ policies and practices that fail to design, construct, and alter their facilities so that they are readily accessible and usable and/or that Defendants employ maintenance and operational policies and practices that are unable to maintain accessibility.

48.    As evidenced by the widespread inaccessibility of Defendants' parking facilities, absent a change in Defendants' corporate policies and practices, access barriers are likely to reoccur in Defendants' facilities even after they have been remediated.

49.    Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, inaccessibility to affect Defendants' network of facilities.

## CLASS ALLEGATIONS

50.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All persons with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any Tanger outlet location in the United States on the basis of disability because such persons

encountered accessibility barriers due to Defendants' failure to comply with the ADA's accessible parking and path of travel requirements.

51.     <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

52.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

53.     <u>Common Questions of Fact and Law</u>:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

54.     <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

55.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

56.    The allegations contained in the previous paragraphs are incorporated by reference.

57.    Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

58.    Defendants' facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs.  42 U.S.C. § 12183(a).

59.    Further, the accessible features of Defendants' facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.  28 C.F.R. § 36.211.

60.    The architectural barriers described above demonstrate that Defendants' facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs and/or that Defendants' facilities were not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

61.    Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

62.    Defendants' repeated and systemic failures to design, construct, and alter their facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

63.    Defendants' facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

64.    Defendants are required to provide individuals who use wheelchairs full and equal enjoyment of their facilities.  42 U.S.C. § 12182(a).

65.    Defendants have failed, and continue to fail, to provide individuals who use wheelchairs with full and equal enjoyment of their facilities.

66.    Defendants have discriminated against Plaintiff and the class in that they have failed to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

67.    Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

68.    Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

69.    Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a.    A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described

16

above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to change their policies and practices to prevent the reoccurrence of access barriers post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.  An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.  Payment of costs of suit;

e.  Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.  The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated:  December 10, 2018                    Respectfully Submitted,

                                             *s/ James L. Ward, Jr.*
                                             James L. Ward, Jr.
                                             Fed. ID No. 6956
                                             **MCGOWAN HOOD & FELDER, LLC**
                                             321 Wingo Way, Suite 103
                                             Mt. Pleasant, SC 29464
                                             Phone: 843-388-7202
                                             Fax: 843-388-3194
                                             jward@mcgowanhood.com

                                             Gregory A. DeLuca
                                             Fed. ID No. 7748
                                             **DeLUCA MAUCHER, L.L.P.**
                                             113 Broughton Road
                                             Moncks Corner, SC 29461
                                             Phone: 843-899-7877
                                             Fax: 843-899-7687
                                             greg@delucamaucher.com

Benjamin J. Sweet*
Kelly K. Iverson*
Elizabeth L. Pollock-Avery*
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: 412-322-9243
Fax: 412-231-0246
bsweet@carlsonlynch.com

*Counsel for Plaintiff and the Class*

*pro hac vice application forthcoming*